# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ROBERT JACKSON, )
　 )
Claimant-Below/Appellant, )
　 ) C.A. No. N25A-03-003 FWW
v. )
　 )
PEP BOYS, )
　 )
Employer-Below/Appellee. )

Submitted: July 28, 2025
Decided: October 20, 2025

*On Appeal from the Industrial Accident Board,*
**AFFIRMED.**

## <u>MEMORANDUM OPINION</u>

Christopher Isaac, Esquire, IPPOLITI LAW GROUP, 1225 King Street, Wilmington, DE 19801, attorney for Appellant Robert Jackson

H. Garrett Baker, Esquire, ELZUFON, AUSTIN & MONDELL, 300 Delaware Avenue, 17th Floor, P.O. Box 1630, Wilmington, DE 19899-1630, attorney for Appellee Pep Boys.

**WHARTON, J.**

# I.    INTRODUCTION

Appellant Robert Jackson ("Jackson" or "Employee") is an entirely sympathetic litigant. Since he sustained a compensable work injury to his lower back in 2004, he has suffered through six surgeries without relief. Prior to his most recent attempt at surgical relief, he petitioned the Industrial Accident Board ("Board") for additional compensation due for a reasonable and necessary proposed seventh surgery to remove hardware from a prior surgery. The Board denied his petition because his sixth surgery – the one in which the hardware was installed - previously was determined to be not compensable. In this appeal, he seeks a review of the Board's February 17, 2025 decision denying his petition. Jackson contends that the Board erred when it concluded that the proposed surgery is not compensable due to the sixth surgery - a 2020 non-compensable surgery - constituted an intervening event that broke the chain of causation from the original work injury.

In considering this appeal, the Court must determine whether the Board's decision is supported by substantial evidence and is free from legal error. Specifically, the Court must determine whether the Board erred in determining that the 2020 surgery was an intervening cause breaking the chain of causation from the 2004 original work injury, resulting in subsequent treatment related to the intervening event being not compensable. Upon consideration of the pleadings and the record below, the Court finds that the Board's decision was supported by

2

substantial evidence in the form of the opinion of Dr. Townsend. Further, the Board did not err as a matter of law when it denied Jackson's Petition to Determine Additional Compensation Due. Accordingly, the Board's decision is **AFFIRMED**.

## II. FACTUAL AND PROCEDURAL CONTEXT

The parties entered into a Joint Trial Memorandum/Stipulation for the hearing before the Board on February 3, 2024.[1] That stipulation simply recites, in pertinent part, that: (1) Jackson sustained a compensable work related injury to his low back on February 12, 2004 while employed as a full-time employee for Pep Boys ("Pep Boys" or "Employer"): (2) as a result of his injuries, he underwent five compensable low back surgeries;[2] and (3) on April 3, 2020 Jackson underwent his sixth low back surgery and this surgery was subsequently deemed not compensable by the Board.[3] The Board set out the procedural posture of the case as well as a detailed summary of the evidence presented at the hearing before the Board on February 3, 2024.[4] Since neither party takes exception to the Nature and Stage of the Proceedings or the Summary of the Evidence set out in the Board's decision, the Court accepts them.[5]

---

[1] *Robert Jackson v. Pep Boys*, NO. 1305221, (I.A.B. June 7, 2021). (hereinafter *Jackson*, 2021, No. 1305221

[2] The relevant surgeries took place on July 14, 2004, January 16, 2008, January 26, 2011, June 26, 2013, and October 8, 2014.

[3] *Jackson*, 2021, No. 1305221

[4] *Robert Jackson v. Pep Boys*, NO. 1305221, at 2-6, (I.A.B. February 17, 2025). (hereinafter *Jackson*, 2025, No. 1305221)

[5] *Id.*

On February 12, 2004 Jackson injured his low back while employed as a full-time Assistant Manager for Employer.[6] The injury was found to be compensable and Jackson received workers' compensation benefits.[7] From 2004 to 2014 Jackson underwent five low back surgeries.[8] On July 14, 2004, Jackson underwent his first compensable low back surgery which consisted of a left L4-5 decompression laminectomy with foraminotomy, and left L4-5 microdiscectomy and was performed by Dr. Ali Kalamchi ("Dr. Kalamchi").[9] On January 16, 2008, Jackson underwent his second compensable low back surgery which consisted of an L4-5 midline decompression, lysis of adhesions, and left foraminotomy, left complete L5-S1 discectomy, posterior interbody fusion L4-5, posterior spinal fusion L4-5 with legacy pedicular instrumentation L4-5 also by Dr. Kalamchi.[10] On January 26, 2011, Jackson underwent his third compensable low back surgery which was an exploration of posterior fusion instrumentation at L4-5, removal of legacy pedicular instrumentation and left L5 root decompression also by Dr. Kalamchi.[11] On June 26, 2013, Jackson underwent his fourth compensable low back surgery that consisted of an L3-4 anterior lateral exposure, lateral discectomy, interbody fusion by Dr.

---

[6] *Id.* at 2.
[7] *Id.*
[8] *Id.*
[9] *Jackson*, 2021, No. 1305221 at 2.
[10] *Id.*
[11] *Id.*

Kalamchi.[12]  The fifth and final compensable low back surgery took place on October 8, 2014 and consisted of L1-2 and L2-3 bilateral hemi-laminectomies and right foraminotomy, right L1-2 discectomy and L2 root decompression by Dr. Kalamchi.[13]

A sixth low back surgery took place on April 2, 2020 ("the 2020 surgery").[14] The 2020 surgery was performed by Dr. Zaslavsky and consisted of a direct lateral lumbar interbody fusion at L2-3 with posterior spinal instrumentation and laminectomy.[15]  On September 10, 2020, five months after the surgery took place, Jackson filed a Petition to Determine Additional Compensation Due with the Board requesting compensation for the surgery.[16]  A hearing was held on March 17, 2021 regarding this petition.[17]  The Board denied it, finding that the 2020 surgery was not reasonable and necessary.[18]  No appeal followed that decision.

Jackson filed a Petition to Determine Additional Compensation Due with the board on May 29, 2024.[19]  The petition requested compensation for a proposed surgery to remove the hardware that was placed during the 2020 surgery.[20]  The

---

[12] *Id.*
[13] *Id.*
[14] *Jackson*, 2025, No. 1305221 at 3.
[15] *Id.*
[16] *Jackson*, 2021, No. 1305221 at 3.
[17] *Jackson*, 2025, No. 1305221 at 2.
[18] *Id.*
[19] *Id.*
[20] *Id.*

Board held a hearing on February 3, 2025.[21]  At the hearing, Jackson presented the deposition testimony of Dr. Zaslavsky, a board certified orthopedic surgeon of both the cervical and lumbar spine.[22]  Dr. Zaslavsky opined that the need for the proposed L2-3 hardware removal surgery was directly related to the placement of the hardware during the 2020 surgery.[23]  He testified that the need for the hardware placement in the first place was directly related to the adjacent level problem that Jackson developed as a result of the 2014 and 2015 surgeries.[24]  Dr. Zaslavsky considered the proposed surgery to remove the hardware to be reasonable, necessary, and casually related to the 2004 work injury.[25]

Dr. Zaslavsky testified that he began treating Jackson in March of 2020.[26] Before treating with Dr. Zaslavsky, Jackson was a patient of Dr. Kalamchi and had five low back surgeries with Dr. Kalamchi.[27]  Regarding the 2020 surgery, Dr. Zaslavsky opined that he did not feel that conservative treatment was indicated as the complaints of quadricep weakness could lead to long-term dysfunction.[28]  In his opinion Jackson has had a considerable amount of degenerative changes since the

_____

[21] *Id.* at 3.
[22] *Id.*
[23] *Id* at 4.
[24] *Id.*
[25] *Id.*
[26] *Id.* at 3.
[27] *Id.*
[28] *Id.*

6

surgery in 2020, has developed adjacent level disease, worsening stenosis at the L1-2 level, and has pain from the hardware itself.[29] Jackson was given two surgical options by Dr. Zaslavsky, the first was to have an L1-2 lumbar fusion and remove the hardware at L2-3 and the second was to just take out the hardware from the 2020 surgery.[30] Dr Zaslavsky considered the hardware removal to be a conservative option for Jackson and that it followed the Delaware Workers compensation treatment guidelines for adjacent level disease.[31] The Board only considered the hardware removal option at the hearing.[32]

Jackson last saw Dr. Zaslavsky on April 14, 2020 and his last office visit was March 21, 2024 with a Physician Assistant.[33] Dr. Zaslavsky reviewed the office notes after each visit.[34] At the time of the hearing Jackson was not cleared for surgery as he needed preoperative lab work and medical clearance from his nephrologist.[35] The nephrologist's clearance was necessary due to Jackson undergoing a nephrectomy on November 21, 2023.[36]

---

[29] *Id.*
[30] *Id.*
[31] *Id.* at 4.
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*

Jackson testified as well. He testified that he was injured on February 12, 2004 while at work, and had no back problems before that date.[37] Jackson treated with Dr. Zaslavsky after his previous surgeon retired.[38] Before the 2020 surgery he stated that he was in pain, unable to walk, and had trouble standing from a seated position.[39] Jackson was very happy with the 2020 surgery and felt wonderful after it.[40] He received an injection in September of 2020 in order to relieve pain in his back, pins and needles down his inner thigh, and to relive pressure.[41] He testified that he cannot pick up his three year old child and has trouble interacting with his children due to his back pain.[42] Jackson has not been able to return to work, and has trouble with daily activities of life such as driving, standing, and shopping.[43] He will not see Dr. Zaslavsky until the proposed surgery, and he goes to the emergency room if he needs treatment for his pain.[44]

Dr. Townsend testified by deposition for the Employer.[45] He is a board-certified neurologist licensed to practice in Delaware.[46] He has reviewed the

---

[37] *Id.* at 5.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.* at 5.
[46] *Id.*

pertinent medical records and examined Jackson six times: April 15, 2014, April 21, 2015, November 1, 2016, July 7, 2020, November 5, 2020, and most recently July 23, 2024.[47] Dr. Townsend testified that he knew that the 2020 surgery could result in Jackson developing adjacent level syndrome.[48] He believes that the proposed removal surgery is reasonable but if the hardware was not placed during the 2020 surgery there would be no need to remove it.[49] He further opined that the 2020 surgery is the sole cause for the need to perform the hardware removal surgery.[50]

During his examination of Jackson on July 23, 2024, Jackson reported eight out of 10 pain on the right side of his low back and numbness in his knees.[51] Jackson reported to Dr. Townsend that he did not do any form of stretching exercises due to swelling of the back when completed.[52] Dr. Townsend explained that Jackson's presentation of his current symptoms made sense because the last surgery was at a level in the back where numbness in the thighs down to the knees would be expected.[53] There was a question as to whether the irritation was caused by the nerve root being weak and compressed due to the 2020 surgery or if it was related to the

---

[47] *Id.*
[48] *Id.* at 5.
[49] *Id.*
[50] *Id.*
[51] *Id.* at 5-6.
[52] *Id.*
[53] *Id.*

9

work accident.[54]  Dr. Townsend testified that it was difficult to determine whether the symptoms were related to degenerative changes or the work injury, and the difficulty was due to the 2020 surgery.[55]

Dr. Townsend further explained that the proposed surgery does not have anything to do with findings of radiculopathy, adjacent level syndrome, or degenerative changes at L2-3 or any other level - it is solely to remove something causing pain.[56]  He opined that it is reasonable to remove the hardware installed during the 2020 surgery due to an improvement in Jackson's pain when a nerve block was placed in the area where the hardware is located.[57]

Based on the totality of the evidence presented, the Board, consistent with both surgeon's opinions, found that Jackson met his burden of showing that the proposed surgery is reasonable and necessary to  relieve the pain he experiences due to the hardware.[58]  Further, the Board accepted the opinion of Dr. Townsend that he could not causally connect the proposed surgery to the 2004 work accident over that of Dr. Zaslavsky that they were causally related in part because Dr. Townsend has seen Jackson three times since Dr. Zaslavsky last saw him.[59]  In accepting Dr.

---

[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id*. at 10.
[59] *Id*. at 11.

10

Townsend's opinion the Board rejected Dr. Zaslavsky's opinion that there was a causal relationship between the 2004 injury and the proposed surgery.[60]

The Board concluded that the proposed surgery is not compensable due to the 2020 surgery breaking the causal link between the 2004 injury and any worsening of the condition.[61]  In particular the Board pointed out that the proposed surgery is needed due to adverse consequences of a surgery for which Pep Boys was not liable.[62] The Board noted that the 2020 surgery was completed without first requesting pre-approval.[63]  In denying the 2020 petition the Board was concerned that Jackson's former surgeon, Dr. Kalamchi disagreed with the 2020 surgery and went as far as saying that a further fusion surgery verged on reckless behavior.[64] Finally the Board reminded the parties that the 2020 surgery was deemed unreasonable and the only change to Jackson's physical condition is the worsening of it attributable to the 2020 surgery.[65]

### III.   THE PARTIES' CONTENTIONS

Jackson contends that the Board's decision should be reversed because the Board committed legal error in finding that the 2020 surgery was a superseding

---

[60] Id at 11.
[61] Id at 13.
[62] Id at 11.
[63] *Id.*
[64] *Id.*
[65] *Id*. at 13.

11

intervening cause between the 2004 work accident and the proposed hardware removal surgery.[66] First, Jackson contends that the Board committed legal error when it failed to conduct a proper inquiry regarding the intervening nature of the 2020 surgery on Jackson's current condition and need for surgery.[67] In particular, the Board failed to fully consider the evidence presented by Jackson regarding the cause of his current symptoms.[68] Jackson argues that the testimony presented to the Board clearly establishes that the symptoms that require another surgery are a result of the 2004 work accident and the 2020 surgery was not an intervening cause.[69] Further, the Board failed to apply the appropriate standard for intervening causation.[70] The Board failed to apply an analysis that would "require the IAB to determine whether the workplace injury and prior compensable injuries played *any* part in the need for treatment - in this case the Proposed Surgery."[71]

Second, Jackson contends that the Board erred as a matter of law by finding that treatment resulting from reckless conduct by a physician is not compensable.[72] Jackson challenges not only the Board's February 2025 decision but also the March

---

[66] Op. Br. at 17, D.I. 15.
[67] *Id.* at 18-19.
[68] *Id.* at 20.
[69] *Id*. at 18, 20.
[70] *Id.* at 21.
[71] *Id*. at 21
[72] *Id*. at 22.

2021 decision that originally found the 2020 surgery not compensable.[73] Specifically, he contends that the Board's determination that the 2020 surgery verged on recklessness is improper as a justification for denying the proposed surgery.[74] Further, the denial of the proposed surgery due to this finding "threatens to punish claimants for perceived mistakes made by their treating physicians."[75] Jackson also contends that there is a gap in the Board's analysis because he was not asked whether he was aware the 2020 surgery was not approved by the Board/employer before he had it.[76] He contends there is no precedential support for the position the Board took.[77]

In his third argument, Jackson focuses predominately on challenging the March 2021 decision.[78] Jackson notes that under *Cline v. Nemours Foundation*,[79] the Board must consider whether all reasonable conservative measures have been exhausted when making a determination on the reasonableness of a surgery.[80] Jackson identifies the Board's failure to consider the testimony of Dr. Zaslavsky as it relates to the rationale of performing the 2020 surgery, as well as all conservative

---

[73] *Id.* at 22-23.
[74] *Id.* at 22.
[75] *Id.*
[76] *Id.* At 23.
[77] *Id.*
[78] *Id*. at 24.
[79] 2023 WL 6622211 (Del. Super. Ct. Oct. 11, 2023).
[80] Op. Br. at 24, D.I. 15.

13

treatment Jackson had before the 2020 surgery.[81] He concludes that the Court should find that the Board's decision is not the product of logical and deductive reasoning.[82]

In its Answering Brief, Pep Boys contends that the Board's decision is supported by substantial evidence and is free from legal error.[83] Pep Boys emphasizes the testimony of Dr. Townsend and Dr. Zaslavsky, in which they both agree that the proposed surgery is directly related to the not compensable 2020 surgery.[84] Further, it disagrees with Jackson's contention that the hearing officer did not consider the relationship between the proposed surgery and the 2004 work injury.[85] The hearing officer agreed with both experts and even drew a line stating that employer remains liable for conditions unaltered by the surgery.[86] Pep Boys contends that Jackson's reliance on *Stevenson v. Haveg Indus.*,[87] is misplaced as it focuses on medical malpractice that resulted from a compensable surgery.[88] It argues that Jackson confuses a reckless decision to operate with the reckless performance of an appropriate surgery.[89] Finally, Pep Boys points out that the

---

[81] *Id.* at 24-25.
[82] *Id.* at 26.
[83] Ans. Br. at 10, D.I. 16.
[84] *Id.* at 11-12.
[85] *Id.* at 12.
[86] *Id.*
[87] 1985 WL 188996 (Del. Super. Apr. 15, 1985).
[88] *Id.*
[89] *Id.* at 13

reasonableness of the 2020 surgery is not on appeal here since that decision is final. Thus, Jackson's argument regarding the applicability of *Cline*[90] is irrelevant.[91]

In his Reply Brief, Jackson asserts that Pep Boys unsuccessfully attempted to distinguish between the pain from the 2004 injury and pain from the 2020 surgery.[92] He argues that the 2020 surgery is a direct result of the 2004 injury.[93] Jackson further asserts that the 2020 surgery now would be considered reasonable and necessary and the Board failed to apply the standard that would lead to that finding.[94] Jackson seeks a reconsideration of whether the 2020 surgery was reasonable and necessary.[95]

## IV. STANDARD OF REVIEW

The Board's decision must be affirmed so long as it is supported by substantial evidence and is free from legal error.[96] Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.[97] While a preponderance of evidence is not necessary, substantial evidence means "more than

---

[90] 2023 WL 6622211.
[91] Ans. Br. at 15, D.I. 16.
[92] Reply Br. at 6, D.I. 17.
[93] *Id.* at 6.
[94] *Id.* at 7.
[95] *Id*. at 13.
[96] *Conagra/Pilgrim's Pride, Inc. v. Green*, 2008 WL 2429113, at *2 (Del. June 17, 2008).
[97] *Kelley v. Perdue Farms*, 123 A.3d 150, 153 (Del. Super. 2015) (citing *Person-Gaines v. Pepco Holdings, Inc*., 981 A.2d 1159, 1161 (Del. 2009).

15

a mere scintilla."[98] Questions of law are reviewed *de novo*,[99] but because the Court does not weigh evidence, determine questions of credibility, or make its own factual findings,[100] it must uphold the decision of the Board unless the Court finds that the Board's decision "exceeds the bounds of reason given the circumstances."[101]

## V.     DISCUSSION

The Board summarized its decision as follows:

> In this case, there was an intervention of the unreasonable 2020 surgery. Without the effects of the 2020 surgery, Claimant cannot prevail on his claim the proposed surgery is reasonable, necessary and related to the 2004 work injury as the 2020 surgery constitutes an intervening event breaking the chain of causation from the original work injury at least with regard to any worsening of the condition. The only changes to Claimant's physical condition are the worsening of his condition attributable to the 2020 surgery, such as the pain problems at L2-3. Because the 2020 surgery breaks the causal link, the proposed surgery is not compensable.[102]

---

[98] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).
[99] *Kelley*, 123 A.3d at 152–53 (citing *Vincent v. E. Shore Markets*, 970 A.2d 160, 163 (Del. 2009)).
[100] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66–67 (Del. 1965)).
[101] *Bromwell v. Chrysler LLC*, 2010 WL 4513086, at *3 (Del. Super. Oct. 28, 2010) (quoting *Bolden v. Kraft Foods*, 2005 WL 3526324, at *3 (Del. Dec. 21, 2005)).
[102] *Jackson*, 2025, No. 1305221 at 13.

The bottom line is that the Board concluded that the proposed surgery is not compensable due to the 2020 surgery acting as an intervening event that broke the causal connection to the 2004 work accident.

Jackson argues that the Board erred as a matter of law when it made the determination that the 2020 surgery was a superseding intervening cause of the current condition.[103] Throughout his argument, Jackson repeatedly challenges and questions the Board's 2021 decision, which was not at issue at the hearing and is not at issue in this appeal. Because Jackson did not appeal the Board's 2021 decision, its determinations are final.

The Findings of Fact and Conclusions of Law section of the Board's decision contains three sections, background on the 2021 decision, whether the proposed surgery is reasonable and necessary, and compensability.[104] The Board found the proposed surgery reasonable and necessary.[105] The main issue in this appeal is the Board's finding on compensability. Its analysis includes the following:

> [H]aving found that the surgery is reasonable and necessary, the issue becomes whether Employer can be required to pay for the adverse consequences of a surgery Employer was not liable for. It simply cannot be held that reasonable medical treatment is anything Claimant's treating doctor recommends. *See Bullock v. K-Mart Corporation*, Del. Super., C.A. No. 94A-02-002, 1995 WL 339025 at *3 (May 5, 1995) (if doctor directs claimant

---

[103] Op. Br. at 17, D.I. 15
[104] *Jackson*, 2025, No. 1305221 at 7-12.
[105] *Id.* at 11.

to undergo unreasonable treatment, nothing in the law requires Employer to pay for that treatment). In this case Claimant was certainly aware his former surgeon did not recommend further fusion surgery for him, but possibly a candidate for insertion of a dorsal column stimulator. Dr. Zaslavsky, having first seen Claimant about one month prior to surgery and without reading Claimant's medical records. persuaded Claimant he needed immediate fusion surgery.

Another factor needs to be considered here. Dr. Zaslavsky and Claimant persisted in having the 2020 surgery without first requesting pre-approval as was requested and granted before the prior surgeries or a second opinion as his former surgeon stated he was not a candidate for further fusion surgery verges on reckless behavior. Claimant certainly cannot maintain he had the surgery believing it would be covered. On the contrary, he proceeded knowing full well the reasonableness of the procedure could be challenged by Employer. In addition, Claimant did not know what the result of the Board's decision would be when he had the 2020 surgery which was not preapproved. The hearing was held on March 17, 2021, and the written decision was sent to the parties on June 7. 2021.

The question becomes whether the consequences resulting directly from the 2020 surgery found to be reasonable and necessary are compensable. Employer maintains Claimant is not entitled to compensation for the consequences from the 2020 surgery.

It is self-evident when an employee has suffered a compensable injury, Employer is required to pay for reasonable and necessary medical services connected with that injury. DEL. CODE ANN. tit. 19, § 2322. However, it has also long been established Delaware law that "[i]f a physician directs a patient to undergo treatment which turns out not to be reasonable or necessary to treat a compensable injury, ... there is nothing in the statute which requires Employer to pay the cost. If the converse were

18

true, the door to all sorts of abuses would be opened." *Bullock v. K-Mart Corporation*, Del. Super., C.A. No. 94A-02-002, 1995 WL 339025 at *3 (May 5, 1995). If Employer is not required to pay the cost of unreasonable medical treatment, then it must logically follow Employer cannot be held responsible for negative consequences of that unreasonable treatment. It would be contrary to all reason to say Employer does not have to pay for an unreasonable surgery but must pay for the additional harm to Claimant caused by that surgery. In short, if Claimant underwent unreasonable medical treatment and that treatment results in a worsening of Claimant's condition, that surgery can constitute an intervening event breaking the chain of causation from the original work injury at least with regard to any worsening of the condition. *See* Arthur Larson, Lex K. Larson & Thomas A. Robinson, *Larson's Workers' Compensation Law*, § 10.04 at 10-13 (Desk Edition 2021) (giving hypothetical of person seeking unreasonable medical treatment and noting it would be unlikely the negative results of such care would be compensable).

At the March 17, 2021 hearing, Employer's medical expert and counsel both repeatedly stated bluntly the proposed surgery should not be done as conservative treatment was not exhausted. *Jackson*, at 14. Prior to the 2020 surgery, Employer did not have the opportunity to express itself on the reasonableness of that surgery. That surgery has been deemed unreasonable. As such, Employer is not responsible for the consequences of that surgery. *Maria Klenk v. The Medical Center of Delaware (a/k/a Christiana Care)*, Del. IAB No. 946781 (Feb. 23, 2007), aff'd 2008 WL 250548 (Jan. 30, 2008) (Del. Super. 2008).

In this case, there was an intervention of the unreasonable 2020 surgery. Without the effects of the 2020 surgery, Claimant cannot prevail on his claim the proposed surgery is reasonable, necessary and related to the 2004 work injury as the 2020 surgery constitutes an intervening event breaking the chain of causation from the original work

19

injury at least with regard to any worsening of the condition. The only changes to Claimant's physical condition are the worsening of his condition attributable to the 2020 surgery, such as the pain problems at L2-3. Because the 2020 surgery breaks the causal link, the proposed surgery is not compensable.[106]

The Court's task here is limited to determining whether the Board committed legal error and whether its factual findings are supported by substantial evidence.[107] The Board committed no legal error in holding that the proposed removal surgery is not compensable under the Delaware Workers' Compensation Act. Delaware precedent, particularly *Klenk v. Medical Center of Delaware*[108] makes clear that an employer is not responsible for negative consequences flowing directly from a medical procedure deemed unreasonable and unnecessary. In *Klenk*, the Court explained that "[I]t belies common sense to hold that the detrimental results of a procedure deemed not necessary or reasonable to undertake are compensable."[109] Here, the reason for the proposed surgery is to remove hardware implanted during the 2020 fusion.[110] Because that earlier procedure has been determined to be unreasonable and unnecessary, the resulting complications cannot create a new, compensable obligation for the employer.

---

[106] *Jackson*, 2025, No. 1305221 at 11-13.
[107] *Conagra/Pilgrim's Pride, Inc.,* WL 2429113, at *2.
[108] 2008 WL 250548, at *5 (Del. Super. Jan. 30, 2008).
[109] *Id.*
[110] Ans. Br. Ex. A at 23-24; Ans Br. Ex. B at 35-37, D.I. 16.

Jackson's argument that he lacked warning or understanding that the 2020 surgery would not be covered does not alter the analysis. *Klenk* focuses on the character of the treatment, not the claimant's subjective belief or intent.[111] Once a procedure is adjudicated unreasonable as it was by the Board in its 2021 decision, the employer's responsibility for its direct future impact ends. The Board, therefore, applied the correct legal standard in concluding that the 2020 surgery was a superseding, intervening cause that broke the chain of causation from the original 2004 injury.

Jackson cites *Reese v. Home Budget Center*,[112] which addresses aggravation of a dormant, pre-existing condition by a compensable injury.[113] The facts here involve no aggravation of a prior condition but rather complications stemming entirely from an intervening, not compensable procedure. Likewise, *Stevenson*,[114] which extends coverage to negligent performance of reasonable and necessary medical treatment, is inapposite because the 2020 fusion itself was found unreasonable. *Stevenson* presupposes that the underlying treatment was found compensable; it cannot be extended to impose liability for the results of treatment that never qualified as reasonable or necessary in the first place.[115] Finally, the

[111] *Klenk,* 2008 WL 250548, at *5.
[112] 619 A.2d 907 (Del. 1992).
[113] Op. Br. at 17-18, D.I. 15.
[114] *Stevenson,* 1985 WL 188996, at *2.
[115] *Id.*

claimant's reliance on *Cline* is misplaced. *Cline* addresses how reasonableness should be evaluated prospectively under a subjective standard, but the 2020 finding of unreasonableness is final and cannot be collaterally revisited in this proceeding. The Board therefore committed no error of law.

The Board's decision is supported by substantial evidence. The testimony of both medical experts, one for the claimant and one for the employer, was unequivocal that the need for hardware removal resulted from the hardware inserted during the 2020 fusion.[116] The Board credited the testimony of Dr. Townsend regarding his inability to determine a causal connection between the proposed surgery and the 2004 work injury over the testimony of Dr. Zaslavsky due to Dr. Townsend having seen Jackson three times since Dr. Zaslavsky last saw him.[117] It is well settled that this Court will not reweigh evidence or substitute its judgment for that of the Board.[118] The Board's factual determination that the 2020 fusion constituted a superseding cause of the claimant's present condition is fully supported by the record. Because the Board correctly applied Delaware law and its findings rest on substantial evidence, the Court finds no basis to disturb the decision.

## VI. CONCLUSION

---

[116] Ans. Br. Ex. A at 23-24; Ans Br. Ex. B at 35-37, D,I, 16.
[117] *Jackson*, 2025, No. 1305221 at 11.
[118] *Bullock,* 1995 WL 339025, at *2.

22

For the reasons set forth above, the decision of the Industrial Accident Board denying compensation for the proposed hardware-removal surgery is **AFFIRMED.** **IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.